**STATE of Minnesota, Respondent,**

v.

**Jeffrey L. ANDERSON, Appellant.**

**No. C4–86–516.**

Supreme Court of Minnesota.

Dec. 5, 1986.

Ann McDiarmid, Minneapolis, for appellant.

Thomas Johnson, Hennepin Co. Atty., Minneapolis, for respondent.

## OPINION

SIMONETT, Justice.

Defendant appeals from his conviction for first-degree (felony) murder and aggravated robbery. We affirm.

Defendant-appellant Jeffrey L. Anderson, age 18, was charged with the robbery of Eugene Lassek on July 28, 1985, and the robbery and stabbing death of Michael McArthur, some 7 weeks later, on September 15, 1985. The charges were consolidated for trial. The jury found defendant guilty of aggravated robbery of Eugene Lassek and guilty of first-degree (felony) murder and aggravated robbery of Michael McArthur. Defendant was sentenced to life imprisonment for the murder and to a concurrent term of 32 months for the Lassek aggravated robbery.

Both defendant and Lassek testified on the Lassek robbery. Lassek, a homosexual, met defendant at Loring Park and invited defendant to his apartment. Defendant testified he decided to rob Lassek. He came up behind Lassek, placed his arm around Lassek's throat and held one of Lassek's kitchen butcher knives in front of the victim's face. He ordered Lassek to go into the bedroom and lie face down on the bed, "spread eagle." Lassek, after offering brief opposition, did as he was told. Defendant took Lassek's wallet, checkbook with credit cards, and the personal identification number for his First Bank card (later using the card to withdraw $175 from Lassek's bank account). When Lassek attempted to get up from the bed, defendant put the tip of the knife to his back and told him to lie still. Defendant also took a stereo radio, two jackets, and a wristwatch. On August 6, 1985, Lassek identified defendant in a photo lineup and also identified his wallet, credit cards, and First Bank card, which the police had recovered.

In the Michael McArthur case, the police were called to McArthur's apartment on Sunday, September 15, 1985, and found McArthur's body on the floor dressed only in a bathrobe. There was a large tear in the back of the robe and, underneath, two stab wounds in the back. The medical examiner estimated death had occurred 6 to 8 hours earlier. There were no signs of a forced entry and no evidence in the room of a struggle. Defendant's fingerprints were found on an open Diet Pepsi can in the refrigerator. A clean butcher knife was found near the sink next to a dishrag containing a dark stain. McArthur's wallet and keys were missing. A traffic citation indicating McArthur's car had been parked in the vicinity of Loring Park at 2:23 a.m., September 15, was found near the body. The victim's body had a blood alcohol content of .20.

Because of similarities to the Lassek case and because of defendant's fingerprint on the Pepsi can in McArthur's apartment, a search warrant for defendant's apartment was obtained and defendant was arrested for the robbery of Eugene Lassek. Initially, defendant denied any knowledge of Lassek and McArthur, but eventually he admitted his involvement. He told the police where to find most of the items taken from McArthur's apartment.

At trial defendant testified he spent the evening of September 14, 1985, with a friend and described the events of that evening. Sometime after midnight, he testified, he was hitchhiking on Franklin Avenue in Minneapolis when Mike McArthur gave him a ride in his car. They drove to McArthur's apartment. After talking and drinking for about 2 hours, defendant said he was going to leave. McArthur went into his bedroom and reemerged wearing only an open robe. Defendant testified McArthur had a knife, pointed it at defendant's stomach, and told defendant to take off his clothes. Defendant says this is when he learned McArthur was a homosexual. Earlier that evening, defendant had been attacked by four men, one with a switchblade. Defendant testified that, spurred by memory of that previous encounter, he jumped McArthur and wrapped his arms around him in a bear hug. There was a struggle. Defendant grabbed the blade of the knife, pried off McArthur's fingers, got the knife away, pushed McArthur away from him, and stabbed McAr-

thur twice. Defendant said he did not stab McArthur to kill, nor did he realize he had cut the pulmonary artery, but had simply been scared. Defendant testified that after McArthur died, he sat in the room drinking until daylight. At some point, he rinsed off the glasses and the knife. By the time he left he was very drunk. He grabbed a bottle of rum, scooped everything that was on the table, including rings, wallet, and keys, into a duffel bag and left. Defendant denied removing a ring from the victim's finger, although a police officer testified that defendant had told him he had done so.

Defendant testified when he got home he called his friend and told him he had done a bad thing. Defendant said he knew the police would come for him, so he sat home all day Sunday, September 15, and Monday, September 16, waiting until they finally arrived. Defendant's friend testified that defendant called him about noon on Sunday and told him he had a ring with a stone and some credit cards. Defendant kept repeating, "I did something bad, Dave," and said he had robbed and murdered someone. When the friend expressed disbelief he would do something like that, defendant agreed, "No, I didn't."

At the trial, the state, over objection, presented *Spriegl* evidence of another robbery by defendant which occurred after the Lassek robbery and prior to the McArthur stabbing death. The robbery victim testified that on August 1, 1985, at 3:30 a.m., he had picked up defendant near Loring Park. They shook hands in a manner indicating to the victim that defendant was a homosexual. The two men went to a secluded area on East River Road and had a voluntary sexual encounter. When through, defendant grabbed the victim around the throat from behind and put him to his knees. Defendant asked the victim for everything in his pockets and was given money, various credit cards, and other items. Defendant then told the victim to drive him toward Loring Park. Instead, the victim drove to downtown Minneapolis, stopped in front of the police station, got out of the car, and yelled for help to two nearby police officers. One of the police officers testified he searched defendant and found a number of items which the victim said were his. Under the passenger seat of the victim's car, the police officer found Eugene Lassek's wallet. In his account of this incident, defendant testified he had been hitchhiking near Loring Park when the victim gave him a ride and then insisted on driving to the east bank of the Mississippi River. There defendant says he discovered the victim was gay. Defendant said he pushed the victim away and threatened to punch him. He stated that the victim had given or lent him the items the police officer found in his pockets, with the exception of a money clip which defendant said he found lying on the car seat and pocketed. Defendant testified he put Lassek's wallet under the front seat of the car so the police would not find it.

Defendant raises two issues on appeal: (1) Did the trial court abuse its discretion by admitting the *Spriegl* evidence of the August 1, 1985, robbery? and (2) Was the evidence sufficient beyond a reasonable doubt that defendant was not acting in self-defense when he stabbed and killed Michael McArthur?

■ 1. The evidence of the August 1, 1985, robbery was properly admitted to show a common scheme, plan, or *modus operandi*. This court has adopted a flexible approach in determining the relevancy of *Spriegl* evidence and will defer to the trial court's decision. Generally, there must be some similarity—either in time, location or technique—between the *Spriegl* offense and the offenses charged. *See, e.g., State v. Kumpula,* 355 N.W.2d 697, 702 (Minn.1984); *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). Here the key similarities are that defendant allowed himself to be picked up by homosexual men, accompanied them to a secluded or private place, and then used force or the threat of force to rob them. Furthermore, the defendant met all three victims in the vicinity of Loring Park, and the offenses all occurred within a 7–week period. Defendant argues the jury may have convicted

him because of a seeming propensity for robbing homosexual men. Any potential for prejudice in the other-crime evidence, however, is clearly outweighed by its probative value as bearing on defendant's motive and intent in going to McArthur's apartment and in what happened there.

2. The next issue is whether the state proved beyond a reasonable doubt that defendant's use of deadly force against McArthur was not justified. *See State v. Austin,* 332 N.W.2d 21, 23 (Minn.1983). The answer is clearly yes.

■ The jury could have disbelieved defendant's claim of self-defense. *See State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). There was no evidence of the alleged struggle nor of any defensive wounds (*i.e.,* cutting-type wounds indicating McArthur had tried to fend off the attack). Two of McArthur's friends, neither of whom is gay, testified McArthur was a gentle person and, when drunk, he simply got giddy and talkative, not violent, and that he would never sexually assault or otherwise attack anyone whether he were drunk or sober. The jury could have found, as contended by the state, that defendant intended to forcibly rob McArthur when he accompanied McArthur to his apartment; that defendant was never in danger while in the apartment but rather defendant took the butcher knife from McArthur's kitchen and killed McArthur with the knife when McArthur resisted being robbed. Defendant had initially told his friend that he had robbed and murdered someone, and he admits taking McArthur's belongings from the apartment. Based on the evidence, the jury could have concluded defendant lied about a struggle and that McArthur did not threaten him with a knife. The Lassek robbery and the robbery of August 1, 1985, were further evidence from which the jury could have found defendant intended to rob McArthur when he went to his apartment. Finally, the evidence simply sustains, as defendant concedes, conviction for the aggravated robbery of Lassek.

Affirmed.